**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CORRYN THOMPSON )<br>MIKE STOKES JR. )<br>INTERVENTIONAL PAIN INSTITUTE, )<br> )<br>Plaintiffs, )<br> )<br> )<br>v. )<br> )<br>STATE FARM MUTUAL AUTOMOBILE )<br>INSURANCE COMPANY )<br> )<br>STATE FARM FIRE & CASUALTY )<br>COMPANY )<br> )<br>Defendants. ) | Case No. 4:20-cv-1166<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This lawsuit exposes a pattern and practice in the Missouri property insurance industry in which insurance companies regularly, and as their standard operating procedure, gain advantage over their insureds and others through the use of unlawful subrogation practices. This occurs every time an insurance company, behind the backs of their insureds, unlawfully seeks reimbursement through a "subrogation claim" from the insurance company of a third-party tortfeasor. The insurance company is "reimbursed", yet does not return its insured's deductible, and when its insured files suit against the tortfeasor she will learn that, in fact, the tortfeasor's insurance company believes it has already satisfied the insured's claims.

2.      These practices harm insureds and are contrary to Missouri law. While the insurance companies defend these practices as "voluntary payments" between insurance companies, that do not legally affect the rights of the insureds to seek judgments against tortfeasors, nothing could be further from the truth. When a tortfeasor's insurance company has

already paid another insurance company in reimbursement for claims paid to the latter's insured, it has *de facto* already settled with that insured. Indeed, the insured's insurer *represents falsely to the tortfeasor's insurer that it has the legal right—conferred by its insured—to seek reimbursement.* Then, when the insured negotiates a settlement of its claims with the tortfeasor, the tortfeasor's insurance company factors the reimbursement payments into its calculations, and accordingly will offer or accept less. The ability of an insured to be fully compensated for his losses is therefore diminished.

3.      In addition, the unlawful subrogation practices complained of herein enable insurance companies to avoid paying their legally mandated pro-rata share of litigation expenses and attorney's fees and fully compensating consumers for their covered losses. This is done through an egregious abuse of the insurer-insured relationship whereby the insurer—without the consent or knowledge of its insured—acts as its insured's attorney in negotiating and arbitrating a prospective legal dispute with the tortfeasor's insurance company.

4.      The wrongful acts by Missouri insurance companies, including the Defendant here, distort the Missouri property insurance market to the detriment of Missouri insurance consumers. The unlawful practices complained of herein have the effect of thwarting the purpose of insurance because such practices put the needs of the insurance companies over their obligation to make their insureds whole following covered losses. These practices must end because they are unlawful and damage consumers, often without consumers' knowledge.

5.      In Missouri, in the context of property damage claims, subrogation only exists as and between an insurance company and its named insured.

6.      In Missouri, an insurance company for a property damaged insured, after making payment to its insured for the property damage, can never make a "subrogation" claim or file a

2

lawsuit against the tortfeasor who caused the property damage, or that tortfeasor's insurance company.

7.    In Missouri, an insurance company can only present a subrogation claim to its own insured; and then, only after the insured has recovered monies from a third-party tortfeasor or that tortfeasor's insurance company, for the injuries and damages arising from the incident that caused the property damage.

8.    In Missouri, if the amount recovered by the insured from a third-party tortfeasor or that tortfeasor's insurance company, is in an amount less than the insured's "uninsured losses," i.e. those losses not covered and paid out by the insured's insurance company, then the insurance company recovers nothing on its subrogation claim directed to its insured.

9.    Under Missouri law, Plaintiff offer the following example as to how property damage subrogation claims are to be handled:

*Driver A is involved in an automobile collision with Driver B. Both drivers are fully insured. Driver B is 100% a fault for the collision. Driver A's vehicle suffers property damage. Driver A submits his property damage claim to his insurance company and that insurance company pays for the property damage less Driver A's deductible. Driver A then files a claim against Driver B for damages including, but not limited to, his property damage claim. Driver A thereafter settles all of his claims with Driver B's insurance company. Driver A then notifies his insurance company of the settlement and holds those funds "in trust" for his insurance company pending determination of his insurance company subrogation interest, if any, in the funds recovered by settlement. If the "uninsured losses" exceed the amount recovered, then Driver A owes nothing to their insurance company on his subrogation claim.*

10.     Using the same example as set out hereinabove, here is how Defendants are in fact, handling these subrogation claims illegally and unlawfully.

*Driver A's insurance company pays the Driver A's claim less Driver A's deductible. Then Driver A's insurance company, without the consent of Driver A, directs a "subrogation" claim to Driver B's insurance company. Driver B's insurance company then pays Driver A's insurance company in full for the amount that Driver A's insurance company paid to Driver A without any consideration or reduction for Driver A's "uninsured losses."*

11.      For the year 2019, in Missouri, Defendant State Farm paid out approximately $35,925,896[1] to its Missouri citizen insureds for automobile property damage sustained by its insureds as a result of collisions that occurred in the State of Missouri. Following a number of those payments, on information and belief, Defendant State Farm made unlawful and illegal "subrogation claims" directed to the insurance company for the tortfeasor whose negligence caused State Farm's insureds' property damage.

12.     During the same time period, Defendant State Farm paid out approximately $23,408,347[2] in automobile liability property damage claims on behalf of its insureds for automobile property damage suffered by others as a result of the negligence of its insureds, but rather than making those payments to the person who suffered property damage, Defendant State Farm made payments to the insurance companies for those persons.

13.     Thus, Defendant State Farm presented "subrogation claims" against insurance companies that issued policies to third-party tortfeasors, without consent of Plaintiff insureds, despite existing Missouri law which does not permit such activity.

---

[1] As reported to Missouri Department of Insurance as 2019 Supplemental Data for Property and Casualty.
[2] *Id.*

14.    Plaintiff have been damaged by the unlawful practices of Defendant by, *inter alia,* their insurance companies making "subrogation claims" on their behalf but without their consent, failing to fully compensate Plaintiff, and withholding from Plaintiff her deductibles after paying a portion of Plaintiff's covered property losses.

15.    Plaintiff has been deprived the ability to be made whole due, at least in part, to Defendant State Farm's unlawful "subrogation claims."

16.    Defendant State Farm deprived Plaintiff of any ability to negotiate, arbitrate, or affect any payments between the third-party insurance company and State Farm, the amount of which payment affected Plaintiff's rights and obligations as to Defendant State Farm. As, for example, Plaintiff may be obligated to pay Defendant State Farm the difference between the payment to Defendant State Farm from a tortfeasor's insurance company and the amount Plaintiff received from State Farm as reimbursement for claims made.

17.    Defendant State Farm deprived Plaintiff of her legal rights by, without Plaintiff's knowledge or consent, representing to third party insurance company that State Farm possessed the legal right to make a "subrogation claim" on behalf of Plaintiff when in fact, it has no such legal right.

18.     Plaintiff was harmed by Defendant State Farm's misrepresentation to the third-party insurance company. For example, had Defendant State Farm negotiated Plaintiff's legal claims with the third party insurance company for the full amount of the monies Defendant State Farm paid to Plaintiff pursuant to their insurance agreement, Plaintiff could have benefitted from a setoff in the event Defendant State Farm made a legitimate subrogation claim against Plaintiff.

19.    Additionally, by way of example, any monies paid by the third party insurance company to Defendant State Farm—based on Defendant State Farm's purported "subrogation

claim"—is monies that the third party insurance company would not pay to Plaintiff in settlement of Plaintiff's claim against the tortfeasors (insureds of the third party insurance company). Notwithstanding the possibility that the tortfeasors would not be entitled to a setoff of amounts paid by the third party insurance company to Defendant State Farm, the third-party insurance company would not be inclined to pay Plaintiff (in a settlement, for example) when it already paid Defendant State Farm (on its "subrogation claim") for the same purpose.

20.     Plaintiff alleges that, pursuant to Fed. R. Civ. P. 11(b)(3), it is likely to have evidentiary support after a reasonable opportunity for discovery that the third-party insurance company's willingness and ability to settle (and the amounts it was willing to offer or accept) was unduly influenced (to Plaintiff's detriment) by the monies it paid to Defendant State Farm pursuant to State Farm's "subrogation claim." Such factors further adversely affected Plaintiff's negotiating position and negatively affected the value of Plaintiff's legal claims, which were unlawfully coopted and unlawfully asserted by Defendant State Farm.

21.     Furthermore, Plaintiff have has damaged by the unlawful practices of Defendant State Farm to the extent that such unlawful "subrogation claims" direct at, and paid by, insurance companies for third-party tortfeasors have delayed, prevented or otherwise interfered with, Plaintiff's ability to recover monies from such third-party insurance companies.

22.     For every wrong there is a remedy. Defendant State Farm unlawfully represented to another insurance company that Plaintiff granted it a "subrogation claim" and thereby induced the other insurance company to remit a "reimbursement" payment to State Farm. At the same time, Plaintiff has not been made whole, and sought recovery from the tortfeasors that had caused her damages. The tortfeasor's insurance company balked at paying the same claim twice and, even after settling their action, the Plaintiff was prevented from sharing litigation expenses

and attorneys' fees with Defendant State Farm *even though* State Farm had already recovered a "reimbursement" from the insurance company. Defendant State Farm abused its position of trust and misrepresented its rights to put itself first before its insured. As a result, Plaintiff was damaged and State Farm was enriched.

23.     The aforementioned "subrogation claims" were, and continue to be, illegal in the State of Missouri because in Missouri, subrogation exists only between an insurance company and its insured, and subrogation exists only after the insured has been fully compensated for all losses caused by a tortfeasor including those losses not covered by the policy of insurance issued by the insurers to their insureds, and only after all of the insured's legal expenses, if any, are deducted.

24.     The Defendant presented "subrogation claims" against the insurance company that issued policies to the third-party tortfeasor, without the consent of Plaintiff insured and despite Missouri law, which does not permit such activity.

25.     Plaintiff has been damaged by the unlawful practices of her Defendant insurance company, insurance companies for third-party tortfeasors, by, *inter alia*, her insurance company making "subrogation claims," purportedly on her behalf but without her consent, proceeding with these "subrogation claims" through arbitration without her consent, failing to fully compensate her, and withholding from her deductible, and only paying a portion of Plaintiff's covered property losses.

**PARTIES**

26.     Plaintiff Corryn Thompson is a citizen and resident of the state of Missouri who, within the last five years, suffered damage to real property in Missouri as a result of the negligence of a third-party tortfeasor not named in this action.

27.    Plaintiff Mike Stokes Jr. is a citizen and resident of the state of Missouri who, within the last five years, suffered damage to real property in Missouri as a result of the negligence of a third-party tortfeasor not named in this action.

28.    Plaintiff Interventional Pain Institute, LLC, ("Interventional Pain"), is a Missouri Limited Liability Company who suffered damage to real property in Missouri as a result of the negligence of a third-party tortfeasor not named in this action.

29.    Defendant State Farm Mutual Automobile Insurance Company, ("State Farm Mutual") is a foreign insurance company incorporated in the State of Illinois with a principal place of business in Illinois. State Farm is duly authorized in accordance with the laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

30.    Defendant State Farm Fire And Casualty Company ("State Farm Casualty") is a foreign insurance company incorporated in the State of Illinois with a principal place of business in Illinois. State Farm is duly authorized in accordance with the laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

31.    Defendants State Farm Casualty and State Farm Mutual are collectively referred to herein as "State Farm."

**JURISDICTION AND VENUE**

32.    Jurisdiction is proper in Federal Court pursuant to CAFA, 28 U.S.C. § 1332(d)(2), as it is a controversy that exceeds $5,000,000 and is a class action with a class member that is a citizen of a State different from any Defendant.

33.     Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. 1391(b)(2), as "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Missouri.

## FACTUAL BACKGROUND

### A. Relationship Between Plaintiff Corryn Thompson and Defendant State Farm

34.     On or about June 13, 2019, Plaintiff Corryn Thompson was involved in an automobile accident with a third-party tortfeasor not named in this action.

35.     On or about June 13, 2019, Plaintiff Corryn Thompson sustained damage to her vehicle that resulted in a total loss.

36.     At the time of the collision, Plaintiff Thompson was insured by a policy of insurance by Defendant State Farm (Policy No. 0811136-E05-25F).

37.     The tortfeasor was insured by a policy of insurance issued by State Farm.

38.     As a result of the June 13, 2019 automobile collision, Plaintiff Corryn Thompson made a claim to Defendant State Farm for property damage. State Farm paid only a portion of the claim to Plaintiff Corryn Thompson. The amount that Plaintiff Thompson received was less than the damages she was entitled to.

39.     After paying a portion of the property damage covered by her policy, Defendant State Farm made a "subrogation claim" directed to the tortfeasor's insurance company, State Farm which State Farm paid.

40.     Defendant State Farm and State Farm privately negotiated and/or arbitrated the "subrogation claim" and together came to an agreement regarding *inter alia,* who was at fault, the amount of damages or loss involved, whether any discounts should be applied, and other matters affecting the rights of the Plaintiff, without the Plaintiff's knowledge and/or consent.

41.    On or about November 18, 2017 Plaintiff Mike Stokes was involved in an automobile accident with a third-party tortfeasor not named in this action.

42.    On or about November 18, 2017 Plaintiff Mike Stokes sustained damage to his vehicle which resulted in a total loss.

43.    At the time of the collision, Plaintiff Thompson was insured by a policy of insurance by Defendant State Farm (Policy No. 228-7120-C14-25D).

44.    The tortfeasor was insured by a policy of insurance issued by Landstar Insurance, ("Landstar").

45.    As a result of the November 18, 2017 automobile collision, Plaintiff Stokes made a claim to Defendant State Farm for property damage. State Farm paid only a portion of the claim to Plaintiff Stokes. The amount that Plaintiff Stokes received was less than the damages he was entitled to.

46.    After paying a portion of the property damage covered by his policy, Defendant State Farm made a "subrogation claim" directed to the tortfeasor's insurance company, Landstar, which Landstar paid.

47.    Defendant State Farm and Landstar privately negotiated and/or arbitrated the "subrogation claim" and together came to an agreement regarding *inter alia,* who was at fault, the amount of damages or loss involved, whether any discounts should be applied, and other matters affecting the rights of the Plaintiff, without the Plaintiff's knowledge and/or consent.

48.    On or about January 1, 2015, Plaintiff Interventional Pain was involved in an automobile accident with a third-party tortfeasor not named in this action.

49.    On or about January 1, 2015 Plaintiff Interventional Pain sustained damage to its building.

10

50.    At the time of the collision, Plaintiff Interventional Pain was insured by a policy of insurance by Defendant State Farm (Policy No. 95-BY-B631-9).

51.    The tortfeasor was insured by a policy of insurance issued by National Interstate Insurance, ("National Interstate").

52.    As a result of the January 1, 2015 automobile collision, Plaintiff Interventional Pain made a claim to Defendant State Farm for property damage. State Farm paid only a portion of the claim to Plaintiff Interventional Pain. The amount that Plaintiff Interventional Pain received was less than the damages it was entitled to.

53.    After paying a portion of the property damage covered by its policy, Defendant State Farm made a "subrogation claim" directed to the tortfeasor's insurance company, National Interstate, which National Interstate paid.

54.    Defendant State Farm and National Interstate privately negotiated and/or arbitrated the "subrogation claim" and together came to an agreement regarding *inter alia,* who was at fault, the amount of damages or loss involved, whether any discounts should be applied, and other matters affecting the rights of the Plaintiffs, without the Plaintiffs' knowledge and/or consent.

**B.  Overview of the Parties' Dispute**

55.    Defendant State Farm is an insurance company duly licensed and authorized to write liability and casualty insurance policies in the State of Missouri in accordance with the statutes, regulations, and law of the State of Missouri.

56.    State Farm issued policies of liability and casualty insurance for the named Plaintiffs and to putative class members not named here.

57.     State Farm paid or asserted unlawful "subrogation claims" without the consent of their named insureds.

58.     In Missouri, a subrogation interest is equitable in nature and exists only as and between an insurance company and its named insured.

59.     In Missouri, a property casualty insurer has no legal right to make a direct claim against an alleged tortfeasor or the alleged tortfeasor's liability insurer for reimbursement of payments it made to its insured. *Hagar v. Wright Tire & Appliance, Inc.,* 33 S.W.3d 605, 610 (Mo. Ct. App. 2000). ("Missouri provides that the legal title to the cause of action [against the tortfeasors] remains in the insured, and that the insurer's only interest is an equitable right to subrogation.").

60.     In Missouri, a subrogation claim does not accrue unless, and until, an insured recovers monies from or on behalf of the third-party tortfeasor responsible for the insured's property loss. *Hagar,* 33 S.W.3d at 610.

61.     In Missouri, an insured is not obligated to reimburse its property casualty insurer for payments that an insurance company made to the insured under the insured's property and casualty insurance policy for an insured loss unless the amount received from or on behalf of a third party tortfeasor exceeds the value of the insured's "uninsured loss."

62.     In Missouri, an insurance company properly asserting a subrogation claim against its insured must reduce that claim by its pro-rata share of the litigation expenses and attorney's fees incurred by the insured in the process of recovering funds from the third party tortfeasor responsible for the insured's loss. *Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. 2002)(En banc).

63.     Defendant State Farm, after paying a portion of the property damage claims to its named insureds, including the named Plaintiffs, and without the consent of the insureds,

presented illegal "subrogation claims," to other liability insurance companies covering liability claims for the third-party tortfeasors responsible in negligence for the property damage loss suffered by the Plaintiffs.

64.     As a result of the aforementioned acts, Plaintiffs suffered a monetary loss when the Defendant insurance company unlawfully and illegally retained Plaintiffs' deductibles after receiving full payment from their unlawful "subrogation claims" to the third party tortfeasors' insurance company, and Plaintiffs will in the future continue to suffer monetary loss.

65.     As a result of the aforementioned acts, Plaintiffs suffered other monetary losses when Defendant State Farm failed to fully compensate Plaintiffs.

66.     As a result of the aforementioned acts, Plaintiffs were also damaged when, because of Defendant State Farm's illegal "subrogation claims" directed at third-party tortfeasors' insurance companies, Defendant State Farm delayed, prevented, or otherwise interfered with, Plaintiffs' ability recover monies from such third-party insurance companies.

67.     As a result of the aforementioned acts, Plaintiffs suffered a monetary loss when Defendant, by its "subrogation claim" prevented Plaintiffs from being able to obtain a full recovery from the third party tortfeasor for her property damages, including uninsured losses.

68.     As a result of the aforementioned acts, Plaintiffs suffered a monetary loss when Defendant, by its "subrogation claim" failed to reduce its claim by a pro-rata share of litigation expenses and attorney's fees incurred by Plaintiffs in the process of recovering funds from the third party tortfeasor responsible for Plaintiffs' loss.

69.     As a result of the aforementioned acts, Plaintiffs were also damaged when, because of Defendant State Farm's illegal "subrogation claims" directed at third-party tortfeasors' insurance companies, Plaintiffs recovered less than she otherwise would have

recovered from third party tortfeasors, or their insurance companies, due to the third party insurance companies having already paid over monies to State Farm without Plaintiffs' knowledge or consent.

70.     As a result of the aforementioned acts, Plaintiffs were also damaged to the extent that Defendant State Farm withheld payments it received from the third-party tortfeasors' insurance companies, as reimbursement for payments it made to Plaintiff pursuant to State Farm's "subrogation claim" when, in fact, the amount received by Plaintiffs from or on behalf of the third party tortfeasors did not exceed Plaintiffs' "uninsured losses."

71.     As a result of the aforementioned acts, Defendant State Farm has been unjustly enriched to the extent that Defendant State Farm withheld payments it received from the third-party tortfeasors' insurance companies, as reimbursement for payments it made to Plaintiff pursuant to State Farm's "subrogation claim" when in fact, the amount received by Plaintiff from or on behalf of the third-party tortfeasors did not exceed Plaintiffs' "uninsured losses"

72.     As a result of the aforementioned acts, Plaintiffs were also damaged when Defendant State Farm prematurely and wrongfully asserted and was paid on, a "subrogation claim" to and by the third-party tortfeasors' insurance companies, which had the purposeful effect of Defendant State Farm avoiding reducing its subrogation claim by the pro-rata share of the litigation expenses and attorney's fees incurred by Plaintiffs in the process of recovering funds from the third-party tortfeasors for Plaintiffs' losses. *See Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. 2002)(En banc).

73.     Defendant State Farm's assertion of a "subrogation claim" in the context and manner described above and herein is, on information and belief, designed to advantage Defendant State Farm to the detriment of its insureds, including the Plaintiffs.

74.    The assertion of  premature and unlawful "subrogation claims" as described herein benefits Defendant State Farm, to the detriment of its insureds, including Plaintiffs, by: (1) avoiding reducing State Farm's legitimate subrogation claim by a pro-rata share of the litigation expenses and attorney's fees incurred to secure recovery from the tortfeasors; (2) enabling Defendant State Farm to negotiate, arbitrate and/or settle its insureds claims in a manner advantageous to State Farm without involving its insureds; (3) enabling Defendant State Farm to secure reimbursement for monies paid to its insured early and in advance of any judicial determination of fault, damages, or "uninsured losses"; (4) securing reimbursement for Defendant State Farm of monies paid to its insured that State Farm is not entitled to; and (5) securing reimbursement for Defendant State Farm (without its insured knowledge or consent) while simultaneously retaining State Farm's ability to seek reimbursement from its insured and/or additional reimbursement from the tortfeasors or the tortfeasors' insurance companies.

75.    The assertion of premature and unlawful "subrogation claims" as described herein harms insured of Defendant State Farm, including Plaintiffs, by (1) limiting the ability and willingness of third party tortfeasors' and/or third party tortfeasors' insurance companies to pay for and/or settle claims brought by injured parties, including Plaintiffs; (2) avoiding sharing in the State Farm-insureds' litigation expenses and attorneys' fees expended to recover from third party tortfeasors; (3) excluding State Farm-insureds, including Plaintiffs form participating in adversarial negotiations, arbitrations and/or settlement discussions with third party insurance companies wherein issues related to fault, losses, damages and causation are determined and, the result of which, affects the amounts that the third-party insurance company is willing to pay to State Farm insureds and the amount to which State Farm insureds may be liable for reimbursement to State Farm pursuant to legitimate subrogation claims.

76.     In asserting "subrogation claims" that did not belong to it, Defendant State Farm represented falsely to a third-party insurance companies that it had a right to reimbursement of the amount it paid to Plaintiff. Defendant State Farm represented falsely to the third-party tortfeasors' insurance companies that it possessed the legal right to recover on behalf of Plaintiffs when in fact, all it held was a subrogation interest.

77.     This was done to induce payment by the third-party insurance company to Defendant State Farm. As a result of the third-party insurance companies' reliance on State Farm's representation, the insurance companies made payments to Defendant State Farm which in order to satisfy Plaintiffs' claims against the third-party tortfeasors and their insurance companies.

## ALLEGATIONS COMMON TO THE CLASS

78. This action is brought pursuant to Federal Rule of Civil Procedure 23 on behalf of the Plaintiffs and all similarly situated individuals consisting of:

a.     such Missouri citizens having a policy of insurance issued in the State of Missouri by the named Defendant, that suffered property damage in the State of Missouri caused by a third-party tortfeasor to which the Defendant received money on a "subrogation claim" and in which Plaintiff was harmed by Defendants' "subrogation claim"; such as Plaintiffs was not fully compensated by either failing to receive their deductible; by Defendants failing to share their portion of the litigation expenses Plaintiffs expended to recover against the third-party tortfeasors; or by Defendants interfering with Plaintiffs' ability to recover monies from third party tortfeasors or their insurance companies.

79. The class is so numerous that joinder of all members of the class is impracticable as the number of putative class members are counted in the thousands.

80.    Plaintiffs reserve the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses or to limit particular issues as discovery and orders of this Court warrant.

81. There are questions of law and fact common to the class, as each putative class member seeks an order from this court declaring that the Defendants' "subrogation claims" made directly to third party tortfeasors or their insurers are unlawful and illegal in the State of Missouri.

82.    The claims of representative Plaintiffs are typical of the claims of the class as each of their property casualty insurance companies have submitted or paid unlawful and illegal "subrogation claims" directed to third party tortfeasors or their insurers.

83.    Plaintiffs will fairly and adequately represent and protect the interests of the putative class. Plaintiffs retained competent and experienced counsel in the prosecution of this type of litigation.

84.    The prosecution of separate actions by or against individual members of the class would create the risk of incompatible standards of conduct for members of the class and the Defendant.

85.    The prosecution of separate actions by or against individual members of the class would create the risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interest of other members not parties to the adjudications, or substantially impair and impede their ability to protect their interest.

86.    The class action mechanism created by Federal Rule of Civil Procedure 23, is a superior and more efficient method of addressing the issues contained herein promoting judicial economy as the named Plaintiffs and the putative class members cannot afford to litigate against

Defendants individually, thereby making this class action the preferable method of disposing of said claims together, as opposed to piecemeal litigation. The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final declaratory judgment relief and/or final injunctive relief appropriate in this matter.

87.     The questions of law and fact common to the class predominate over any questions affecting only individual members and, therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the only core issue for this court to determine is whether the Defendant acted unlawfully and illegally in presenting "subrogation claims" to third party tortfeasors or their insurers.

## COUNT I: DECLARATORY JUDGMENT

COMES NOW Plaintiffs, on their behalf and on behalf of others similarly situated, and seeks a declaratory judgment from this Court, and as a basis for said request, Plaintiffs state:

88.     Plaintiffs incorporates by reference herein paragraphs 1 through 87 of this Complaint.

89.     An actual and genuine justifiable controversy exists, between the Defendant on the one hand and the Plaintiffs concerning Defendant's collection and/or payments of any monies arising from a direct "subrogation claim" against an alleged third party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendant has resulted, or imminently will result, in depriving Plaintiffs of their deductibles, legal expenses and costs incurred in recovering funds from third party tortfeasors, and her ability to present claims for damages.

90.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiffs request declaratory judgment concerning the following:

a.     Defendant's collection and/or payment of any monies arising from a "subrogation claim" against an alleged third-party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendant is unlawful and illegal.

b.     Defendant's failure to reduce its "subrogation claim" against its insured by a pro-rata share of the insured's attorney's fees and expenses incurred in securing payment from a third-party tortfeasor is unlawful.

c.     Defendant's presentation of a subrogation claim against its insured when the insured has not been fully compensated for its "uninsured loss" is unlawful.

91.     As the Defendant is authorized and exists in accordance with Missouri law, Defendant knew or should have known that its actions were illegal and unlawful.

92.     As such, an actual and genuine controversy exists between the Parties, and this Court is vested with the power to declare the rights and liabilities of the Parties with regard to Defendant's actions and/or Missouri laws.

93.     Because Defendant's actions have interfered with Plaintiff's ability to present claims for damages to third party tortfeasors, there exists no alternative remedy for Plaintiffs to redress their injuries and/or rights.

WHEREFORE, for Count I Plaintiffs prays for an Order of this Court on her behalf and declaring that the actions of the aforementioned Defendant are unlawful and illegal, and preventing Defendant from all similar unlawful acts in the future.

## COUNT II: INJUNCTIVE RELIEF

COMES NOW Plaintiffs, on her behalf and on behalf of others similarly situated, and for Count II of this Complaint directed to Defendant for injunctive relief, state as follows:

94.     Plaintiffs incorporate by reference herein paragraphs 1 through 93 of the Complaint.

95.     Assuming Plaintiffs succeed on the merits, Plaintiffs will be irreparably harmed if Defendant insurance company is not enjoined from continuing this illegal practice of submitting "subrogation claims" without Plaintiffs' consent to the third party tortfeasor's insurer, receiving payment from that insurer, and then withholding Plaintiffs' deductibles.

96.     The balance of harms weighs in favor of Plaintiffs as Defendant's actions are illegal and no harm will occur to Defendant if stopped from making an unlawful "subrogation claim" without the consent of Plaintiffs.  Plaintiffs, on the other hand, will be harmed as Defendant State Farm will continue to make unlawful "subrogation claims" without Plaintiffs' consent, and Plaintiffs will continue not to be fully compensated due to Defendant Insurance Company withholding their deductibles.

97.     The grant of a permanent injunction weighs in favor of the public interest.

WHEREFORE, for Count II of this Complaint, Plaintiffs pray for an Order of this Court on their behalf, preventing Defendant from engaging in its past and present unlawful "subrogation claim" practices.

## COUNT III: UNJUST ENRICHMENT

COMES NOW Plaintiffs, on their behalf and on behalf of others similarly situated, for Count III of this Complaint directed to the Defendant for unjust enrichment, state as follows:

98.     Plaintiffs incorporate by reference herein paragraphs 1 through 97 of this Complaint.

99.     Plaintiffs conferred a benefit upon Defendant when the Defendant retained Plaintiffs' deductible even though the Defendant had received or paid the full amount of what would have properly been Plaintiffs' claims against a third-party tortfeasor.

100.    Additionally, Plaintiffs conferred a benefit by paying their premiums and were denied the benefit of their right to seek relief from the third-party tortfeasors.

101.    Defendant appreciated the benefit.

102.    Defendant accepted and retained the benefit under inequitable and unjust circumstances given Defendant's illegal and unlawful conduct.

103.    As a direct and proximate result of the aforementioned illegal and unlawful acts the Defendants has become unjustly enriched in receiving funds that it was not legally entitled to receive.

104.    Defendants' illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for Count III of her Complaint Plaintiffs pray for an Order of this Court on their behalf requiring Defendant to disgorge themselves of all unlawfully recovered funds, and Plaintiffs pray for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

## COUNT IV: IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

COMES NOW Plaintiffs, on their behalf and on behalf of others similarly situated, and for Count IV of this Complaint directed to the Defendant for breach of the implied covenant of good faith and fair dealing, state as follows:

105.    Plaintiffs incorporates by reference herein paragraphs 1 through 104 of this Complaint.

106.    An express contract or agreement existed between Plaintiffs and Defendant for insurance, the terms of which included an implied covenant of good faith and fair dealing. Under the agreement, Defendant agreed to insure Plaintiffs for property damages and other damages in the event of losses in exchange for Plaintiffs' payment of premiums to Defendant.

107.    An implicit term of the insurance agreements is that Defendant has no right to prosecute claims on behalf of Plaintiffs directly, nor any right to arbitrate or settle Plaintiffs' claims directly, without Plaintiffs' consent.

108.    Another implicit term of the insurance agreement is that Defendant will not take any actions that would compromise, impair or undermine Plaintiffs' rights with respect to third parties or with respect to recovery of monies from third parties for their losses.

109.    Defendant breached its duties of good faith and fair dealing under the insurance contracts with Plaintiffs by asserting in bad faith "subrogation claims" against third party insurance companies, without Plaintiffs' knowledge or consent, and receiving money from said third party insurance companies in purported satisfaction of said "subrogation claims."

110.    Defendant's breached its duties of good faith and fair dealing under the insurance contract with Plaintiffs by falsely and in bad faith representing to third party insurance companies that Defendant was acting on behalf of Plaintiffs and had Plaintiffs' authorization and consent to submit said "subrogation claims" when in fact Plaintiffs had no knowledge of Defendant's activities.

111.    As a direct and proximate cause of Defendant's breach of its duties of good faith and fair dealing, Plaintiffs have suffered damages and Defendant has been unjustly enriched by, for example, (1) lowering the amount that Plaintiffs recovered from the tortfeasors or the tortfeasor's insurance companies by virtue of the tortfeasors/insurance companies unwillingness

to pay more than once on the same claim; (2) Defendant State Farm avoidance of reducing its subrogation claim by a pro-rata share of the litigation expenses and attorneys' fees expended by Plaintiffs to recover from the tortfeasors; (3) Plaintiffs' inability to reduce its share of litigation expenses and attorney's fees expended to recovery from the tortfeasors when, in fact, Defendant State Farm was partially reimbursed by the third-party tortfeasors' insurance companies for claims made by Plaintiffs; (4) Defendant State Farm's receipt of reimbursement despite Plaintiffs' extant "uninsured loses"; and (5) Plaintiffs' continuing "uninsured losses" despite Defendant State Farm having received monies pursuant to Plaintiffs' legal claims (Defendant State Farm's "subrogation claim").

112.    Defendants' illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs prays for judgment against Defendant on Count IV of this Complaint, for an award of compensatory damages, post-judgment and post-judgment at the stator rate, costs, and for such further relief as the Court deems proper, and Plaintiffs pray for exemplary and punitive damages on their behalf, and on behalf of all others similarly situated.

## COUNT V: MONEY HAD AND RECEIVED

COMES NOW Plaintiffs on their behalf and on behalf of others similarly situated, for Count V of Complaint, claims a right to money had and received by Defendant, and as a basis for said request, Plaintiffs state as follows:

113.    Plaintiffs incorporates by reference herein paragraphs 1 through 112 of this Complaint.

23

114.    Plaintiffs paid premiums, pursuant to their respective insurance contracts, to the Defendant to insure them for their covered property losses.

115.    Plaintiffs suffered property damage and made claims to their Defendant insurance company as claims for their property losses.

116.    Defendant Insurance Company paid Plaintiffs some portion of their losses for their property damage but did not fully compensate Plaintiffs.

117.    Defendant Insurance Company paid Plaintiffs some portion of their losses for their property damage and withheld the amounts of Plaintiffs' deductibles.

118.    Defendant Insurance Company made unlawful "subrogation claims," through Defendant Arbitration Forums, against third-party tortfeasors' insurance companies concerning the Plaintiffs' property loss.

119.    The third-party tortfeasors' insurance company, through Defendant Arbitration Forums, paid the Defendant Insurance Company in satisfaction of the Defendant insurance company's unlawful "subrogation claims."

120.    This was done without the consent of the Plaintiffs.

121.    Plaintiffs were not fully compensated by the Defendant insurance company for their property losses.

122.    Defendant State Farm did not reimburse Plaintiffs for the deductibles that were withheld by Defendant, even once the Defendant had received money from its unlawful "subrogation claims," thus receiving and retaining possession of the Plaintiffs' money.

123.    As a result, Defendant appreciated the benefit as it have in its possession money that rightfully belongs to Plaintiffs and which, in equity and good conscience, should be paid over to Plaintiffs.

24

124.    The Defendant's acceptance and retention of the Plaintiffs' deductibles was unjust.

125.    Defendants' illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for Count V of this Complaint, Plaintiff prays for judgment against Defendant on Count V of this Petition, for an award of damages in an amount at least equal to the amount unjustly had and received by Defendant pursuant to the false representation that Defendant had the legal right, conferred by Plaintiff, to reimbursement from a third party, prejudgment and post-judgment at the statutory rate, costs, and for such further relief as the Court deems proper, and Plaintiff prays for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

## COUNT VI: BREACH OF CONTRACT

COMES NOW Plaintiffs on their behalf and on behalf of other similarly situated, and for Count V of this Complaint, claim against Defendant for breach of contract, and as a basis for said request, Plaintiffs state as follows:

126.    Plaintiffs incorporate by reference herein paragraphs 1 through 125 of this Complaint.

127.    An express contract or agreement existed between Plaintiffs and Defendant for insurance. Under the agreement, Defendant agreed to insure Plaintiffs for property damages and other damages in the event of losses in exchange for Plaintiffs' payments of premiums to Defendants.

128.    In addition, the contracts provided that Defendant had subrogation rights as against Plaintiffs in the event that Defendant paid claims to Plaintiffs suffering losses and

Plaintiffs also recovered monies for such losses from a third-party insurance company or third party defendant.

129.    Defendant breached its contracts with Plaintiffs by prematurely and unlawfully asserting "subrogation claims" against a third-party insurance company, without the knowledge or consent of Plaintiffs, for which Defendant had no legal right to assert.

130.     In asserting said "subrogation claims" against the third-party insurance company, Defendant purported to act within its contractual rights but, in fact, Defendant's actions were illegal and in breach of the contract between Plaintiffs and Defendant.

131.    As a direct and proximate result of Defendant's breach, Plaintiffs have been damaged. As examples, Defendant State Farm's breach affected and caused (1) a lowering of the amount that Plaintiffs recovered from the tortfeasors or the tortfeasors' insurance companies by virtue of the tortfeasors/insurance companies unwillingness to pay more than once on the same claim; (2) Plaintiffs' inability to reduce its share of litigation expenses and attorneys' fees expended to recovery from the tortfeasors when, in fact, Defendant State Farm was partially reimbursed by third-party tortfeasors' insurance companies for claims made by Plaintiffs; (3) Plaintiffs' failure to fully or more fully receive compensation for covered losses at least to the extent of "subrogation claims" monies that are being withheld from Plaintiff by Defendant State Farm; and (4) Plaintiffs' continuing "uninsured losses" that, despite Defendant State Farm having received monies pursuant to Plaintiffs' legal claims (Defendant State Farm's "subrogation claim").

132.    Defendant's illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for Count VI of this Complaint, Plaintiff prays for compensatory

damages on her behalf, and on behalf of all others similarly situated, against the Defendant,

together with Plaintiff's costs herein expended, and Plaintiff prays for exemplary and punitive

damages on her behalf, and on behalf of all others similarly situated.

## COUNT VII: COMPENSATORY DAMAGES

COMES NOW Plaintiffs on Count VII of this Complaint, claim compensatory damages

from Defendant, and as a basis for said request, Plaintiffs states as follows:

133.    Plaintiffs incorporate by reference herein paragraphs 1 through 132 of this

Complaint

134.    As a direct and proximate result of the unlawful and illegal actions of the

Defendant, Plaintiffs have been damaged in the following respects, to-wit:

a.      Plaintiffs have failed to receive the full amount of their "deductible" as that term

is used and defined in the insurance policies issued by Defendant State Farm to the

named Plaintiffs.

b.      Plaintiffs have failed to receive funds for any legal expenses or costs incurred in

recovering funds from third party tortfeasors;

c.      Defendant has interfered with the Plaintiffs' ability to present claims for damages.

WHEREFORE, for Count VI of this Complaint, Plaintiffs pray for compensatory

damages on their behalf against the Defendant State Farm, together with Plaintiffs' costs herein

expended.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 27, 2020                    Respectfully submitted,

                                          */s/ Anthony G. Simon*
                                          Anthony G. Simon, #38745
                                          Anthony R. Friedman, #65531
                                          **THE SIMON LAW FIRM, P.C.**
                                          800 Market Street, Suite 1700
                                          St. Louis, Missouri 63101
                                          (314) 241-2929
                                          Fax: (314) 241-2929
                                          asimon@simonlawpc.com
                                          afriedman@simonlawpc.com

                                          Michael D. Stokes
                                          Gonzalo A. Fernandez
                                          **DEVEREAUX, STOKES, NOLAN,
                                          FERNANDEZ & LEONARD**
                                          133 S. 11th Street, Suite 350
                                          St. Louis, Missouri 63102
                                          (314) 621-3743
                                          Fax: (314) 621-5705
                                          lori@stltriallawyers.com
                                          gonz@stltriallawyers.com

                                          *Counsel for Plaintiff*